UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA M. FREINER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cv-01279-SRC |
| | ) | |
| HON. MARY R. RUSSELL, | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum and Order**

This matter comes before the Court on the motion of self-represented Plaintiff Angela Freiner for leave to commence this civil action without prepayment of the required filing fee. Doc. 2. Having reviewed the motion, the Court grants the motion. *See* 28 U.S.C. § 1915(a)(1). Additionally, for the reasons discussed below, the Court dismisses this action for lack of jurisdiction, and alternatively, for failure to state a claim.

**I.   Background**

**A.  Freiner's amended complaint**

Freiner filed the instant action on October 10, 2023, against the Honorable Mary R. Russell, Chief Justice of the Supreme Court of Missouri. Doc. 1. Freiner filed her complaint on a court-provided form. *Id.* On October 19, 2023, Freiner filed a typed amended complaint and titled it "Amended Complaint for Damages and Injunction," naming Chief Justice Russell as the sole defendant. Freiner sues Chief Justice Russell in "Her Honor's Official Capacity as Council Chair for the Judicial Council of Missouri, the entity for establishing policies for governing the state's courts in Missouri." Doc. 3 at 2. However, the Court has found no record of an entity in Missouri known as the "Judicial Council of Missouri." The Missouri Courts' website lists several boards,

commissions, and committees outlined to "advise the Supreme Court and others in carrying out the Court's administrative responsibilities."  *See* https://www.courts.mo.gov.  However, the Court's inquiry did not find a "Judicial Council of Missouri."

Freiner claims the Court has federal-question jurisdiction pursuant to 28 U.S.C. § 1331 and claims that she alleges violations of the First and Fourteenth Amendments.  Doc. 3 at 1.  In the section of her amended complaint titled, "Statement of Claim," Freiner alleges as follows:

> I, the Claimant, am a parent recognized as "fit" under the law, with no prior findings of being "unfit."  I am challenging the policies implemented by the **JUDICIAL COUNCIL,** which serves as the governing body for Missouri's courts.  My challenge revolves around two key issues.  First and foremost, I contend that the right to 'parenting' is a fundamental right, as firmly established in *Meyer v. Nebraska*, 262 U.S. 390 (1923).  Secondly, I assert that the United States Constitution unequivocally prohibits the issuance of physical custody orders that do not allow for any "actual parenting time" for a parent, *unless that parent is judicially declared 'unfit.'*  Such a declaration of 'unfitness' must be supported by clear and convincing evidence of actual harm of an offspring.  This evidence should be presented in the course of a duly noticed fitness proceeding initiated by the State.

*Id*. at 2–3 (emphases in the original).  Freiner defines her parental fitness as the fact that the state-court did not find that she abused, neglected, abandoned, or endangered her minor child.  Doc. 3 at 4.

Freiner asserts that the state court wrongfully dispossessed her of fundamental rights under the Fourteenth Amendment, including "care, custody and control" of her minor offspring, as well as her First Amendment right of "private familial speech," by never finding her "unfit."  *Id.* at 4.  She appears to acknowledge that the court granted her supervised visitation with her child, but she argues that supervised visits leave her with no actual parenting time because the state is still in control and thus still impeding on her rights.  *Id*. at 5.

Freiner argues that because Chief Justice Russell has a "duty to train Missouri judges" that "fit" parents should have actual parenting time and only "unfit" parents should have a prohibition

2

on physical custody. *Id*. at 7.  She claims that the State, rather than another parent, must bring an "unfitness" proceeding. *Id.* at 8.

Freiner asserts that her complaint raises a *Monell* claim against Chief Justice Russell based on her failure to properly train family court judges that (1) parenting is a fundamental right and (2) courts in Missouri may not issue physical custody orders that grant no actual parenting time without findings of unfitness because, accordingly to Freiner, these policies are unconstitutional. *Id.* at 11; *Monell v. Dep't. of Soc. Servs.,* 436 U.S. 658 (1978).  Freiner seeks both monetary damages and an order from the Court mandating the Judicial Council to train its judicial officers in Missouri on these issues. *Id*. at 13.

### B.  Freiner's other federal litigation

Freiner filed her first civil action in this Court on August 7, 2023.  *See Freiner v. Judy*, No. 4:23-cv-982-HEA (E.D. Mo. 2023) ("*Freiner I*").  She sued James Judy, the co-parent of her minor child, asserting that Judy engaged in a pattern of behavior "aimed at undermining [her] relationship with the offspring and causing emotional harm to [her]."  Freiner asserted that Judy had "interfered with visitation rights, manipulated the offspring's perception of plaintiff, and intentionally undermined the plaintiff's role as a mother."

Freiner sued defendant Judy under 28 U.S.C. § 1332, diversity jurisdiction, claiming violations of Missouri state law, including:  intentional infliction of emotional distress; alienation of her child's affections, including a purported withholding of her child's whereabouts for over a 10-month period; and violation of her parental rights.  She also alleged that Judy made false claims during child-custody hearings, forged legal documents relating to those hearings and as such, led to a temporary restraining order being instituted against Freiner by a family-court judge in state court and Freiner's eventual incarceration.

On August 10, 2023, the court issued a Memorandum and Order requiring Freiner to show cause why the court should not dismiss her case for lack of jurisdiction. Freiner failed to respond to the Order to Show Cause, and the court dismissed the case pursuant to Federal Rule of Civil Procedure 41(b) for failing to timely file a response. *Id.* Freiner moved to amend her complaint and for reconsideration of the dismissal, but the Court denied her motion for reconsideration and to amend on September 18, 2023, because the amended complaint could not establish jurisdiction. *Id.*

In *Freiner I*, Freiner acknowledged that a trial relating to D.L.'s custody took place in St. Louis County Court on or about August 14, 2020. *See Freiner I*, Doc. 9 at 9–10. She stated that the court awarded custody of D.L. to Judy at that time. However, she complained that she and Judy continued to fight over custodial issues relating to D.L. well into December 2020. *Id.* at 11. Freiner complained that the family-court judge denied her motion to amend or modify the Parenting Plan on December 23, 2020. Nonetheless, D.L. refused to return to her father's custody after Christmas break, and she asked to remain in her mother's custody in early January 2021. *Id.* at 12. Judy filed a restraining order seeking to have custody of Judy on or about January 11, 2021, and on January 14, 2021, he sought sole legal and physical custody of D.L.

The state court issued a restraining order on January 14, 2021. The court granted Judy sole legal and physical custody on January 29, 2021, during a preliminary-injunction hearing, and ordered Freiner to relinquish custody at the St. Louis County courthouse on February 3, 2021. Freiner claims that D.L. "chose not to attend" that day. *Id.* at 13. On February 5, 2021, the state-court issued a show-cause order as to Freiner for criminal contempt due to her failure to turn over D.L. and gave Freiner until February 10, 2021, to do so. Freiner contacted Missouri Department of Children and Family Services "on behalf of D.L." on February 9, 2021. The next day, an

4

unnamed person placed D.L. in a "mental ward in St. Louis Children's Hospital. *Id.* at 14. The state court appointed two guardians ad litem to D.L. On March 3, 2021, after Freiner went to the news media about the custody case, the judge recused herself from the custody matters. On March 5, 2021, D.L.'s uncle (Judy's brother) transported D.L. to what appears to be her father's custody. *Freiner I*, Doc. 9, p. 16.

Freiner was formally indicted on criminal-contempt charges on April 21, 2021. She asserted that she lacked any custody over D.L. throughout 2021. However, on May 11, 2022, the court instituted a new Parenting Plan that allowed for some "therapeutic virtual contact" between Freiner and D.L. At that time, the court assigned sole legal and physical custody to Judy. *Freiner I*, Doc. 9 at 19. The court eventually dismissed Freiner's criminal case pursuant to "nolle presequi."

**II.     Standard**

28 U.S.C. § 1915(e)(2) requires the Court to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quotation omitted); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372–73

5

(8th Cir. 2016) (stating that court must accept factual allegations in complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a self-represented complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the Court can discern the essence of an allegation, the Court should construe the complaint in a way that allows it to consider a claim within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914–15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a self-represented complaint the benefit of a liberal construction does not mean that the Court must interpret the Federal Rules of Civil Procedure as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**III.    Discussion**

Having carefully reviewed Freiner's amended complaint in this case, the Court finds that it must dismiss Freiner's claims against Chief Justice Russell for lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction. *McAdams v. McCord*, 533 F.3d 924, 927 (8th Cir. 2008). The Court must assure jurisdiction exists in every case. *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990); *see also Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) ("The threshold requirement in every federal case is jurisdiction and we have admonished the district court to be attentive to a satisfaction of jurisdictional requirements in all cases"). Any party or the Court may raise the issue of the existence of jurisdiction at any time.

6

*Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 982 (8th Cir. 2009).  The Court must dismiss any action over which it determines that it lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3).  Upon review of Freiner's complaint and the record in *Freiner I*, the Court finds no basis for federal jurisdiction.

Freiner asserts that the Court has jurisdiction under 28 U.S.C. § 1331.  Under § 1331, the Court has federal-question jurisdiction to hear cases involving the Constitution, laws, or treaties of the United States.  *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1188 (8th Cir. 2015).  The Court determines whether a claim arises under federal law by reference to the "well-pleaded complaint."  *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 329 (8th Cir. 2016) (internal citations omitted).  The well-pleaded-complaint rule provides that jurisdiction exists only when a plaintiff's properly-pleaded complaint presents a federal question on its face.  *Id.*

In this case, Freiner's complaint does not present a federal question on its face.  Freiner asserts that her complaint raises claims under 42 U.S.C. § 1983 and constitutional provisions, which generally would invoke federal-question jurisdiction.  28 U.S.C. § 1331; 42 U.S.C. § 1983.  However, "[a] court does not obtain subject-matter jurisdiction just because a plaintiff raises a federal question in his or her complaint.  If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate."  *Biscanin v. Merrill Lynch & Co.*, 407 F.3d 905, 907 (8th Cir. 2005).

Freiner attempts to couch her claims under federal statutes like § 1983, as well as the First and the Fourteenth Amendment, but she provides only conclusory claims which lack legal and factual support.  She does not provide either facts or law to suggest that Chief Justice Russell violated federal laws or the Constitution with respect to her claims.  Rather, she attempts to invent

7

new laws to suggest that the state court should hold her to new standards in a new child-custody action.

For example, Freiner asserts that Chief Justice Russell, as the "Council Chair of the Judicial Council of Missouri," must institute new policies in Missouri State Court such that family-court judges can deprive parents of custody only if they find the parent "unfit."  Even though the current state of the law in Missouri does not require this, Freiner believes that the Court should hold Chief Justice Russell liable on a "failure to train" theory.

Under current Missouri law, the court determines custody in accordance with the "best interests of the child."  Mo. Rev. Stat. § 452.375.2.  The Missouri Supreme Court's parenting-plan guidelines require parents to consider the children's needs and best interests above all else and develop a plan to meet those best interests when including specific information for custody and visitation, decision-making rights and responsibilities, dispute resolution, and expense of the children.  *See* Mo. Rev. Stat. § 452.310.  Missouri Revised Statute § 452.375.4 expresses Missouri's public policy for "frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage."  However, an exception exists "for cases where the court specifically finds that such contact is not in the best interest of the child."  *See Van Pelt v. Van Pelt*, 824 S.W.2d 135, 136 (Mo. App. W.D. 1992) (discussing the policy of the state and statutory exception of § 452.400).  Thus, any custody plan approved and ordered by a trial court "shall be in the court's discretion and shall be in the best interest of the child."  Mo. Rev. Stat. § 452.375.9.

Under § 452.400.1(1), a court may place substantial restrictions on visitation when "the court finds, after a hearing, that visitation would endanger the child's physical health or impair his or her emotional development."  A court may employ a unique set of statutory remedies for

8

enforcing child-custody-related contempt judgments, in addition to the traditional remedial-enforcement mechanisms of fines or incarceration, if a parent fails to comply with visitation requirements.  Mo. Rev. Stat. § 452.400.6.  A court can employ the remedies as enforcement mechanisms to effect compliance with a custody order with which a party has not complied.  *Id.*

Because the Court is not privy to the original parenting plan between Freiner and Judy, or any modifications thereof, the Court will not surmise as to the state-court's decisions regarding custody.  Nonetheless, Freiner has not provided enough facts in pleadings and memoranda before the Court to indicate why she seeks to change the law in Missouri regarding custody and/or visitation.  Moreover, the Court has no doubt after review of the present lawsuit that the Court lacks jurisdiction over Freiner's claims and that Freiner's claims lack merit.

In reality, Freiner attempts through this federal case to contest a state-court custody proceeding.  But the Court lacks subject matter jurisdiction to review a Missouri state-court judgment; the Court does not engage in appellate review of state court decisions.  *Postma v. First Fed. Sav. & Loan of Sioux City*, 74 F.3d 160, 162 (8th Cir. 1996).  Of all federal courts, only the United States Supreme Court can review state-court decisions.  *Id.*  Any review of a state court decision by this Court would most likely violate the *Rooker-Feldman* doctrine, which applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  It appears that Freiner's claims here can succeed only if the Court determines that the state court wrongly decided Freiner's case.  As such, Freiner's claims are inextricably intertwined with the state court judgment and the Court lacks jurisdiction to review them under the *Rooker-Feldman* doctrine.  *See Postma,* 74 F.3d at 162.

Finally, the Court lacks jurisdiction over cases involving divorce and child custody under the domestic-relations exception to federal-court jurisdiction. In general, federal courts have no jurisdiction over domestic-relations matters. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). Rather, state courts have exclusive jurisdiction over these matters. *Id.* at 703–04. "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *Ex parte Burrus*, 136 U.S. 586, 593–94 (1890); *see also Kahn v. Kahn*, 21 F.3d 859, 861 (8th Cir. 1994) ("The domestic relations exception … divests the federal courts of jurisdiction over any action for which the subject is a divorce, allowance of alimony, or child custody.") (internal citations omitted). For these reasons, the Court finds that it lacks jurisdiction over the present matter and must dismiss this case.

## IV.   Conclusion

As explained above, the Court grants Freiner's [2] motion for leave to proceed in forma pauperis and dismisses this action without prejudice for lack of jurisdiction and failure to state a claim. A separate Order of Dismissal shall accompany this Memorandum and Order. The Court denies as moot Freiner's [7] motion to expedite review of her in-forma-pauperis application. The Court further orders that an appeal from this dismissal would not be taken in good faith.

So ordered this 18th day of December 2023.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE